# In the United States Court of Federal Claims

No. 11-157C

(Filed:  February 27, 2014)

*************************************

|  |  |
|---|---|
| ) | Calculation of late payment fees and |
| **BAY COUNTY, FLORIDA,** ) | interest on damages due in a contract case; |
| ) | interest payable under the Prompt |
| **Plaintiff,** ) | Payment Act, 31 U.S.C. § 3902(a); late |
| ) | payment fees applicable in lieu of interest |
| **v.** ) | under 5 C.F.R. § 1315.1(c); interest |
| ) | payable under the Contract Disputes Act, |
| **UNITED STATES,** ) | 41 U.S.C. § 7109 |
| ) | |
| **Defendant.** ) | |
| ) | |

*************************************

George R. Mead, II, Moore, Hill & Westmoreland, Pensacola, Florida, for plaintiff.  With him on the briefs was Charles F. Beall, Jr., Moore, Hill & Westmoreland, Pensacola, Florida.

Antonia R. Soares, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Stuart F. Delery, Assistant Attorney General, Bryant G. Snee, Acting Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Christopher S. Cole, Trial Attorney, Commercial Law & Litigation Directorate, Department of the Air Force.

## OPINION AND ORDER

LETTOW, Judge.

The parties have been unable to resolve the proper calculation of late payment fees and interest on the damages due to Bay County, Florida ("Bay County" or "the County") in this contract case.  The United States Air Force ("Air Force" or "the government") contracted with Bay County for the supply of water and sewer services at wholesale rates to Tyndall Air Force Base.  At one point when Bay County increased its water and sewer rates, the Air Force did not pay the higher rates, although it conceded some increase was appropriate.  Previously, the court determined that Bay County was an independent regulatory body within the meaning of the pertinent Federal Acquisition Regulation, 48 C.F.R. § 54.241-7, and was entitled to set rates without any obligation to negotiate those rates with the Air Force.  *See Bay County, Fla. v. United States*, 112 Fed. Cl. 195, 197-98, 202 (2013).  Summary judgment was issued in favor of Bay County on liability, and the court asked the parties to address the proper calculation of damages.  *Id*. at 204.  Agreement was reached on all aspects of damages except for application of

the County's late-payment fee and the associated computation of interest.[1]  The parties have briefed their disputes on these issues.

## BACKGROUND

Bay County, a subdivision of the State of Florida, entered into a Sewage Contract and a Water Contract with Tyndall Air Force Base, located within Bay County, in 1985 and 1988, respectively.  *See Bay County*, 112 Fed. Cl. at 197.  In 1997, the parties executed a bilateral modification to the Sewage Contract to conform the provisions to new FAR requirements.  *Id.* at 198.  A comparable bilateral modification for the Water Contract could not be located by the parties.  *Id.*  In 2000, the County increased the cost of water services and notified the Air Force of the new rate.  *Id.*  The Air Force accepted the rate increase and paid the invoices in full under the new rate.  *Id.* at 198-99.  In 2003, the Sewage Contract was formally amended to reflect the rate increase.  *Id.* at 199.

On October 1, 2007, Bay County adopted a resolution further increasing its wholesale water rates[2] and authorizing yearly increases every subsequent October 1st.  *See Bay County*, 112 Fed. Cl. at 199.  The Air Force disregarded this rate increase and continued to pay at the previous rate.  On May 5, 2009, the County adopted a further resolution setting a five-year *pro forma* rate scheme, effective as of October 1, 2009.  Again, the Air Force refused to recognize this resolution and its accompanying increases and continued to pay the pre-2007 rate for water utility services at Tyndall.  *Id.*  On November 29, 2009 and October 27, 2010, the Air Force purported to unilaterally modify the Water Contract to reflect modest increases over the pre-2007 rate.  *Id.*  These increases fell well short of the amount Bay County invoiced for its other wholesale customers.  *Id.*  Additionally, on December 15, 2009, the County adopted Ordinance No. 09-44 to provide "a penalty of ten percent of the unpaid balance" of a delinquent wholesale water account, *i.e.*, one which was not paid within 30 calendar days of billing.  Pl.'s Mem. at 1 & Ex. 1, ECF Nos. 84, 84-1.  The parties agree that this "Late Payment Fee" became effective beginning in 2010.  Pl.'s Mem. at 1 & Ex. 3, at 5; Def.'s Resp. to Pl.'s Br. ("Def.'s Resp.") at 3, ECF No. 85.  Bay County characterizes the Late Payment Fee as an addition to the invoiced amount rather than interest.  Pl.'s Mem. Ex. 4, ¶ 8 (Second Aff. of Gerald Hartman (Jan. 9, 2014) ("Second Hartman Aff.")).  According to the Hartman affidavit, "[t]he rationale for the fee has been stated to: (a) [r]ecover administrative costs, (b) [r]ecover financing costs, (c) [c]onstitute a penalty for non-compliance, (d) [p]rovide an incentive for timely payment[, and] (e) [c]ombinations of (a) through (d) above."  *Id.* ¶ 10.

## ANALYSIS

The County argues that the Late Payment Fee is essentially a prompt payment discount and should become part of the principal to which applicable interest obligations apply.  Pl.'s

---

[1]The parties agree that the total damages, excluding any applicable interest and late-payment fees, amount to $641,548.82.  *See* Joint Status Report, ECF No. 78.

[2]Bay County's wholesale water rates apply to all of the municipalities in the County as well as to Tyndall Air Force Base.  *See Bay County*, 112 Fed. Cl. at 197 n.1.

Mem. at 4-5.  The government disagrees that the Late Payment Fee should be added to the principal for purposes of determining any interest, whether under the Prompt Payment Act ("PPA"), 31 U.S.C. § 3901-3907, or the Contract Disputes Act ("CDA"), 41 U.S.C. § 7109.  *See* Def.'s Resp. at 3-4.  The government also contends that a portion of the total damages, $346,324.90, was unpaid due to an inadvertent error, and this portion was never in dispute. Def.'s Resp. at 3.[3]  The government avers that the PPA provides the appropriate basis for calculation of any interest due on the undisputed amount.  *Id.* at 2-3.[4]  According to the government, the CDA governs the calculation of interest on the disputed portion, $295,223.92, and bars the application of the Late Payment Fee to this portion.  *Id.* at 4.  Thus interest calculations turn on (1) whether interest on the so-called disputed and undisputed amounts is calculated differently and (2) whether the Late Payment Fee pertains in addition to interest.

Although both the PPA and CDA call for interest to be paid by the government, the statutes apply in differing circumstances.  When there is no disagreement over a payment to be made under a contract, the PPA applies.  *See Environmental Safety Consultants, Inc.*, 95 Fed. Cl. 77, 99 (2010) (citing *PCL Constr. Servs. v. United States*, 84 Fed. Cl. 601, 606 (2008)).  If there is a dispute over a contract claim, the CDA is the appropriate statutory authority and its interest provisions are applicable to that claim.  *Id.*  Bay County resists any split of the damages into disputed and undisputed categories.  Pl.'s Mem. at 2.  The County avers that the so-called undisputed amount formed part of the single claim filed with the court and was not truly undisputed at all.  *Id.*  Factually, the undisputed portion of the damages reflects unilateral increases made for purposes of the Water Contract by the Air Force that it then nonetheless failed to pay; the Air Force would have been obligated to pay that portion even if the parties' positions regarding liability had been resolved differently.  *See* Joint Status Report at 1.  In short, no true dispute existed regarding that portion even though that circumstance was not known by the parties at the outset of this case.

The County also argues that the application of interest is identical regardless of whether the PPA or CDA applies.  Pl.'s Mem. at 2 n.1.  This latter postulate can be correct in many circumstances, but a specific regulation as applied to the facts of this case requires a difference in treatment.  Both the PPA and CDA authorize interest payments at a rate of interest established by the United States Department of the Treasury.  *See* 31 U.S.C. § 3902(a) (PPA) ("The interest shall be computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 7109(a)(1) and (b) of title 41, which is in effect at the time the agency accrues the obligation to pay a late interest penalty.");  41 U.S.C. § 7109(b) (CDA) ("Interest shall accrue and be paid at a rate which the

---

[3]This government's cited amount reflects the water rate resulting from the government's purported unilateral modification to the water contract in 2009.  *See* Joint Status Report, ECF No. 78.

[4]In pertinent part, the PPA provides that "the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due."  31 U.S.C. § 3902(a);  *see New York Guardian Mortgage Corp. v. United States*, 916 F.2d 1558, 1559-60 (Fed. Cir. 1990).

Secretary of the Treasury shall specify as applicable for each successive 6-month period.  The rate shall be determined by the Secretary of the Treasury taking into consideration current private commercial rates of interest for new loans maturing in approximately 5 years.").  A regulation established under the PPA, however, allows and indeed requires the established interest rate to be displaced by "generally-applicable late payment rates for utility payments" imposed by local authorities.  *See* Prompt Payment, 64 Fed. Reg. 52580, 52587 (Sept. 29, 1999) (codified at 5 C.F.R. § 1315.1(c)).[5]  The government contends that according to this regulation, the PPA's interest calculations should apply to any undisputed amount owed prior to 2010, *i.e.*, before the Late Payment Fee became effective, and the Late Payment Fee exclusively should apply to any undisputed amount owed after the penalty became effective.  Def.'s Resp. at 3-4.  The government also argues that only the CDA established rate should apply to the disputed portion.  Def.'s Resp. at 4. [6]

For each portion of damages, the County argues that both the relevant statutory interest *and* the Late Payment Fee should be applied.  Pl.'s Mem. at 4-5.  To support its arguments, Bay County cites numerous opinions issued by the Comptroller General, which permitted interest and late payment charges against the government.  *Id.* at 2-3.  These opinions, all issued prior to 1982, have been effectively superseded by the enactment of the Prompt Payment Act in 1982, *see* Pub. L. No. 97-177, 96 Stat. 85 (May 21, 1982), and the adoption in 1999 of the regulation codified at 5 C.F.R. § 1315.1(c).  Bay County acknowledges this circumstance but attempts to distinguish the Late Payment Fee by stating that it is "a discount for prompt payment" rather than a penalty for late payment, with the consequence that it does not fall within 5 C.F.R. § 1315.1(c).  Pl.'s Br. at 2-4.[7]  This argument is not supported by the County's own ordinance, which states

---

[5]The regulation states: "All utility payments, including payments for telephone service, are subject to the [Prompt Payment] Act except those under paragraph (b)(2) of this section.  Where state, local or foreign authorities impose generally-applicable late payment rates for utility payments, those rates shall take precedence.  In the absence of such rates, this part will apply."  5 C.F.R. § 1315.1(c).  Paragraph 1315.1(b)(2) pertains to payments related to emergencies and is not relevant here.

[6]The government also argues that the Late Payment Fee violates the contract's provision forbidding penalties.  *See* Def.'s Resp. at 5 & Ex. 1.  The court does not need to decide this issue because the government concedes that the Late Payment Fee is applicable under the PPA for undisputed damages after 2010.  *See* Def.'s Resp. at 3-4.

[7]In support of this argument, the County relies primarily on an opinion issued by the Comptroller General in 1981, prior to enactment of the Prompt Payment Act.  *See* Pl.'s Mem. at 4 (citing *Matter Of: Effective Date of Payment in Determining Liability of U.S. Government for Late Payment Charges*, 61 Comp. Gen. 166, 169, B-201384 (Comp. Gen.), 1981 WL 22632, at *3 (Dec. 29 1981)).  In the opinion, the Comptroller General permits the assessment of interest along with a late payment penalty, stating that it is "not aware of a basis for distinguishing prompt payment discount from late payment cases."  61 Comp. Gen. at 169.  While this statement may have been accurate when written, the PPA and its regulations distinguish between late payment penalties and discounted prompt payments.  The PPA permits interest on an invoice

that the imposition of the fee is "a penalty for late payment." Pl.'s Mem. Ex. 1. Additionally, the County's affiant stated that one of the reasons for instituting the fee was to "[c]onstitute a penalty for non-compliance." Second Hartman Aff. ¶ 10. Accordingly, the Late Payment Fee is a "generally-applicable late payment rate" within the meaning of the PPA regulation at 5 C.F.R. § 1315.1(c).

Bay County also argues that the Comptroller General opinions, which were specific to contractual provisions obligating prompt payment of undisputed amounts due, should be extended to apply to the CDA, thereby allowing the court to apply the Late Payment Fee in addition to CDA interest. Pl.'s Mem. at 3-4. However, the County fails to provide any legal support indicating that such an extension is permissible. Not only are the cited Comptroller General opinions effectively superseded by the PPA and regulations under the PPA, but the criteria for allowance of claims and interest under the CDA are different from those pertinent to claims under the PPA. *See PCL Constr. Servs.*, 84 Fed. Cl. at 607 (stating that interpretations of the CDA's interest provisions are "not relevant" to a case involving interest calculations under the PPA). As a result, the proper interest rate for the disputed portion is derived from the CDA's interest provisions.

### CONCLUSION

For the reasons stated, Bay County is awarded $641,548.82 in damages, plus (a) a ten percent Late Payment Fee on that part of the so-called undisputed amount that accrued after 2010, (b) interest in accord with the PPA on the portion of the so-called undisputed amount that accrued prior to 2010, and (c) interest under the CDA on the so-called disputed amount. Interest shall be payable until the date of payment of the County's claim. The parties shall provide a status report on or before March 17, 2014, setting out a precise recapitulation of the amount due under (a) and the interest rates and dates of commencement of interest for purposes of (b) and (c), such that an order for final judgment may be entered promptly thereafter.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

which would have been discounted if paid promptly, 31 U.S.C. § 3904, but does not permit interest on a penalty for late payment, 5 C.F.R. § 1315.1(c).