# In the United States Court of Federal Claims

No.  11-157C

(Filed:  June 12, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **BAY COUNTY, FLORIDA,** ) | Calculation of interest as part of the |
| ) | judgment in a contract case; interest |
| ) | due under the Contract Disputes Act, |
| **Plaintiff,** ) | 41 U.S.C. § 7109, on an undisputed |
| ) | amount plus one year of interest payable |
| **v.** ) | under the Prompt Payment Act, 31 U.S.C. |
| ) | § 3902(a); interest due under the Contract |
| **UNITED STATES,** ) | Disputes Act on damages previously in |
| ) | dispute |
| **Defendant.** ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

George R. Mead, II, Moore, Hill & Westmoreland, Pensacola, Florida, for plaintiff.  With him on the briefs was Charles F. Beall, Jr., Moore, Hill & Westmoreland, Pensacola, Florida.

Antonia R. Soares, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Stuart F. Delery, Assistant Attorney General, Robert E. Kirshman, Jr., Acting Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Christopher S. Cole, Trial Attorney, Commercial Law & Litigation Directorate, Department of the Air Force.

## OPINION AND ORDER FOR FINAL JUDGMENT

LETTOW, Judge.

At issue is the proper calculation of interest on the damages due to Bay County, Florida ("Bay County" or "the County") in this contract case.

## BACKGROUND

The contracts at issue call for Bay County to supply water and sewer services at wholesale rates to Tyndall Air Force Base.  At one point when Bay County increased its water and sewer rates, the Air Force did not pay the higher rates, although it conceded some increase was appropriate.  Bay County submitted a claim for payment under the Contract Disputes Act, 41 U.S.C. § 7103, and then filed a complaint in this court when the Air Force denied the claim. *See Bay County, Fla. v. United States*, 112 Fed. Cl. 195, 199 (2013) ("*Bay County I*").  In resolving cross-motions for summary judgment filed by the parties, the court previously determined that Bay County was an independent regulatory body within the meaning of the

pertinent Federal Acquisition Regulation, 48 C.F.R. § 54.241-7, and thus was entitled to set rates without any obligation to negotiate those rates with the Air Force. *Id*. at 201-03. Summary judgment was issued in favor of Bay County on liability, and the court asked the parties to address the proper calculation of damages. *Id*. at 204. Agreement was then reached on the amounts due Bay County apart from interest. The Air Force conceded that some amounts were undisputed but unpaid due to inadvertent error and that other amounts had been disputed but were specifically ascertainable under the terms of the court's grant of summary judgment on liability. *See Bay County, Fla. v. United States*, 114 Fed. Cl. 755, 756-58 (2014) ("*Bay County II*").[1] The court endeavored in *Bay County II* to resolve several questions pertinent to the computation of interest payable as an aspect of the judgment. Thereafter, the parties nonetheless could not agree on the precise manner of performing these calculations. *See* Joint Status Report at 2-3, ECF No. 94. Additionally, subsequent actions by the Air Force to pay a portion of the undisputed amounts due Bay County have complicated the specific judgment that should be entered.[2]

## ANALYSIS

The parties' residual dispute centers on whether, and to what extent, interest is due under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7109, on amounts indisputably payable, but unpaid, and subject to the Prompt Payment Act ("PPA"), 31 U.S.C. §§ 3901-3907. *See* Def.'s Suppl. Br., ECF No. 99; Pl.'s Supp. Br. on Statutory Interest, ECF No. 100.[3] Three salient, undisputed facts underpin the interest inquiry. First, the so-called "undisputed" amount stems

---

[1]The parties earlier agreed that the total damages under the water contract, excluding any applicable interest and late-payment fees, amounted to $641,548.82. *Bay County II*, 114 Fed. Cl. 757 n.1 (citing Joint Status Report, ECF No. 78). That amount was split between an undisputed portion of $346,324.90, and a disputed portion of $295,223.92. *See id*. The undisputed portion represents the amount the government concedes it owes Bay County pursuant to unilateral increases the government instituted, but failed to pay in actuality. The disputed portion represents the difference between the government's unilateral increases and the rate increases adopted by Bay County.

The parties have since advised that the correct "undisputed" portion is $289,454.77, a reduction of $56,870.13 from the amount previously reported. *See* Joint Status Report at 2-3, ECF No. 94. The reduction in the undisputed amount directly correlates to an increase in the "disputed" amount and does not affect the total damages. *See id*. at 3 n.4. The balance, $352,094.05, is the "disputed" amount.

[2]On April 28 and 29, 2014, the Defense Finance and Accounting Services paid Bay County $289,454.77, the finally adjusted "undisputed" amount, plus an interest penalty of $14,135.02, covering one year's interest under the Prompt Payment Act, 31 U.S.C. § 3902. *See* Notice, ECF No. 96.

[3]As a general matter, PPA interest is only available when [g]overnment payments are "inadvertently late, and not when the [g]overnment refuses to pay or questions its underlying liability." *Inversa, S.A. v. United States*, 73 Fed. Cl. 245, 247 (2006), *aff'd*, No. 2007-5110, 2007 WL 4467656 (Fed. Cir. 2007); *see also Laurelwood Homes LLC v. United States*, 78 Fed. Cl. 290, 293 (2007).

from the water contract and dates back to October 2007. *See Bay County I*, 112 Fed. Cl. at 199. Second, Bay County filed its claim under the CDA with the contracting officer on April 19, 2010. *See id*. at 199 n.1. Third, the contracting officer denied Bay County's claim "in full" on January 20, 2011, Compl. Ex. B, at 3 (Mem. from Lt. Col. Jonathan L. Terry to Bay County Board of Commissioners (Jan. 20, 2011)) ("Claim Denial"), although the contracting officer asserted the right unilaterally to change the rate charged for water, *id*., noting that purported unilateral changes had occurred in 2009 and 2010, and that another change would issue with an effective date of January 20, 2011, *id*. at 3, 5.

In this connection, the court had asked the parties to address the effect of Section 3907 of the PPA, which provides in pertinent part:

> (a)  A claim for an interest penalty not paid under this chapter may be filed under section 7103 of title 41.
> (b)(1)  An interest penalty under this chapter does not continue to accrue —
> > (A)  after a claim for a penalty is filed under chapter 71 of title 41; or
> > (B)  for more than one year.
> (2)  Paragraph (1) of this subsection does not prevent an interest penalty from accruing under section 7109(a)(1) and (b) of title 41 after a penalty stops accruing under this chapter. A penalty accruing under section 7109(a)(1) and (b) may accrue on an unpaid contract payment and on the unpaid penalty under this chapter.
> (c)  Except as provided in section 3904 of this title, this chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract. A claim related to the dispute, and interest payable for the period during which the dispute is being resolved, is subject to chapter 71 of title 41.

31 U.S.C. § 3907. Both parties agreed that one year of interest under the PPA accrued on the undisputed amount, given the express terms of Subparagraph 3907(b)(1)(B). The parties otherwise diverged in their application of Section 3907. The government responded to the court's inquiry by contending that "[Paragraph] 3907(b)(2) forecloses payment of CDA interest prior to the claim date" because it incorporates Section 7109(a)(1) of the CDA, which only allows for interest to be paid from the date the contracting officer receives the contractor's claim. Def.'s Suppl. Br. at 2-3 (citing 41 U.S.C. § 7109(a)(1)). Bay County took a contrary position, arguing (1) that additional interest was obtainable under the CDA, (2) that "the accrual of continued interest was not and could not be the subject of or conditioned by a proper 'claim' under the CDA because they were not amounts in dispute . . . [but] merely amounts unpaid," and (3) that "any such undisputed and unpaid amounts nevertheless continued accruing interest up through the date of payment." Pl.'s Suppl. Br. at 6.

The government went further, however, to raise more fundamental issues, contending that no interest whatsoever is due under the CDA on the "undisputed" amount for two reasons,

namely, (1) interest under the PPA accrues only for one year and not thereafter, and (2) there is no dispute over the payability of the "undisputed" amount, and thus there can be no claim under the CDA that would provide a jurisdictional basis for the court to find an obligation to pay interest pursuant to the CDA. *See* Def.'s Suppl. Br. at 2 n.1, 4-7.

## A. Jurisdiction Over the Undisputed Amount

The government contests the court's juridical power to address the undisputed amount, whether via an award of interest on that amount or otherwise. As the government would have it, "[b]ecause the [g]overnment has never disputed that it owes Bay County under the unilateral modifications [the Air Force made to Bay County's contractual water rates], the undisputed amount does not constitute a 'claim' under the CDA. Accordingly, this [c]ourt does not possess jurisdiction over the undisputed amount." Def.'s Suppl. Br. at 4. The premises for this contention are, however, flawed on both factual and legal grounds.

Factually, the government has acknowledged that it did not actually pay for water supplied to Tyndall Air Base under the rates the Air Force had endeavored to unilaterally impose, which were lower than those Bay County had established as its wholesale rates. Def.'s Suppl. Br. at 7. Instead, Bay County was being paid at the last rate set by Bay County which the Air Force had accepted. *See* Statement of Undisputed Facts ¶ 6, ECF No. 17. When Bay County filed its claims under the CDA with the contracting officer, the County's claims were "denied in full" despite the contracting officer's acknowledgement that at least some payments had been and would be due under the Air Force's unilateral actions. Claim Denial, at 2. In the Claim Denial, the contracting officer had asserted, wrongfully, as the facts were developed, that the water "rate [at the level of the Air Force's most recent unilateral increase] is being paid under the contract." *Id.* at 3; *see* Statement of Undisputed Facts ¶ 10.

In this setting, the Air Force's contention that the undisputed amount could not provide the basis for a claim under the CDA ignores reality. Bay County had to file suit to get the payments due under the water contract, both those the Air Force conceded but had inadvertently not paid and those the Air Force disputed. On its facts, this case bears many similarities to the situation at hand in *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (en banc). In that case, the Federal Circuit extensively and relatively definitively addressed the meaning of the word "claim" in the CDA. Noting that the CDA itself does not define "claim," *id.* at 1575, the court of appeals turned to "the [Federal Acquisition Regulation ("FAR")] implementing the CDA, the language of the contract in dispute, and the facts of the case." *Id.* (citing *Garrett v. General Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993)). The court began its analysis with the definition of "claim" in the FAR, then codified at 48 C.F.R. ("FAR") § 33.201 (1988), and now redesignated and relocated to FAR § 2.101. *Id*; *see also* FAR § 52.233-1 (setting out a mandatory disputes clause incorporating the definition of "claim" as codified in FAR § 2.101). That definition specified that a claim has to take the form of "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain . . . or other relief arising under or relating to the contract." 60 F.3d at 1575 (quoting FAR § 33.201 (1988)); *see also* FAR § 2.101. The court acknowledged the exception that "[a] voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim." *Id.* The explicit question presented in *Reflectone* was whether a claim

required that there be a pre-existing dispute between a contractor and the government.  The question arose in that case because a contractor had made a request for equitable adjustment, and it was not apparent that a disagreement or dispute existed about the adjustment at the time of the contractor's submission of the request to the contracting officer.  *Id*. at 1574.  The Federal Circuit responded that no pre-existing dispute was necessary.  *Id*. at 1575-76.  Rather, only three requirements appertained to and for a non-routine claim for money:  "(1) a written demand, (2) seeking as a matter of right, (3) the payment of money in a sum certain."  *Id*. at 1575. Especially pertinent here is the court's commentary that a "claim" encompasses non-routine demands for money that may or may not be in dispute:

> [T]hat the regulation specifically excludes only undisputed *routine* requests for payment from the category of written demands for payment that satisfy the definition of 'claim' implies that all other written demands seeking payment as a matter of right are 'claims,' whether already in dispute or not.

*Id*. at 1576 (emphasis in original).

Bay County's written demand to the contracting officer for a sum certain of money manifestly was not a routine request for payment, and it otherwise satisfied the definition of a "claim" as interpreted in *Reflectone*.  That a portion of the amount sought might actually not have been in dispute, unbeknownst to the parties at the time, makes no difference.  Bay County's demand to the contracting officer was not a regularly submitted invoice or billing statement. *Compare James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1542-46 (Fed. Cir. 1996) (applying *Reflectone* to hold that a termination settlement proposal was not a routine submission), *with Parsons Global Servs. Inc. v. McHugh*, 677 F.3d 1166, 1170-72 (Fed. Cir. 2012) (applying *Reflectone* to determine that a prime contractor's request for indirect costs by a subcontractor was routine, given the nature of the underlying contract).  As the court of appeals noted in *Parsons Global*, "[t]he distinction between a routine and a non-routine request for payment is a factual one, dependent on the circumstances in which the requested costs arose." 677 F.3d at 1170.  Here, Bay County was not being paid for water and sewer services at the rates it had established, and it submitted a claim for payment at those rates.  It makes no difference that Bay County was not being paid a portion of its rates because of the Air Force's mistaken belief that it was making payment to Bay County at its lesser, unilaterally imposed rates.  After the Air Force realized its mistake, that portion was undisputed.  Nonetheless, that later post-claim correction of a mistake does not render Bay County's claim partially routine.  Thus, Bay County's non-routine demand for payment of a sum certain was a claim under the CDA, even though part of it eventually proved to be undisputed, and it follows that the contracting officer's denial of the claim provided a jurisdictional predicate for Bay County's complaint in this court.

Separately and independently, the PPA implies that a bare demand for interest owed under the PPA may suffice as a claim under the CDA.  Subsection 3907(a) states that "[a] claim for an interest penalty not paid under this chapter[, *i.e.*, the PPA,] may be filed under section 7103 of title 41," thus indicating strongly that a claim under the CDA may be submitted to obtain an unpaid interest penalty under the PPA, as well as further interest under the CDA.  *See Demontiney v. United States ex rel. Dep't of Interior*, 255 F.3d 801, 809 (9th Cir. 2001) (holding

that the PPA was not an independent basis of jurisdiction for suit against the federal government, but jurisdiction over any contract claim against the government was exclusively in the Court of Federal Claims). Moreover, Subsection 3907(b) halts the accrual of the interest penalty on undisputed amounts "after a claim is filed under [the CDA]" or if nonpayment extends "for more than one year." 31 U.S.C. § 3907(b)(1). The PPA provides that, thereafter, interest awardable under the CDA kicks in: "Paragraph (1) of this subsection does not prevent an interest means penalty from accruing under [the interest provisions of the CDA] after a penalty stops accruing under this chapter." 31 U.S.C. § 3907(b)(2). The only way the CDA can be invoked is by means of a "claim," and *Reflectone* interprets "claim" in a way that encompasses non-routine unpaid, undisputed amounts.

In short, Bay County has submitted a jurisdictionally proper CDA claim to enforce its entitlement to PPA interest on the undisputed amount. Pursuant to 31 U.S.C. § 3907(b)(2), Bay County is also entitled to appropriate CDA interest. *See In re Frontier Airlines, Inc.*, 146 B.R. 574, 577 (D. Colo. 1992) ("Section 390[7] permits a claimant under the PPA to file its claim under the CDA and for the claim to accrue interest for up to one year. Thereafter, the CDA's penalty provisions apply."); *cf. Arkansas Best Freight Sys., Inc. v. United States*, 20 Cl. Ct. 776 (1990) (accepting jurisdiction under the CDA for claims to obtain interest pursuant to the PPA).

## B. Interest Payable Under the CDA

The parties' further disagreement centers on whether and to what extent interest is payable under the CDA after the PPA interest penalty on the undisputed amount stopped accruing. As noted *supra*, Paragraph 3907(b)(2) of the PPA allows interest to accrue under the CDA after the interest penalty ceases under the PPA. Because Bay County filed its claim with the government's contracting officer more than a year after the interest penalty of the PPA began accruing, the precise question here is whether interest under the CDA dates back to the date of Bay County's claim or whether it reaches back to the date when the interest penalty stopped under the PPA. Where PPA principal and the accompanying interest penalty have not been paid, Section 3907 indicates that a claim for additional interest under the CDA is permissible, *see* 31 U.S.C. 3907(a), (b)(2), and necessary, *see* 31 U.S.C. § 3907(b)(1), to obtain such interest, as well as payment of the original amounts due under the PPA. In short, the PPA does not itself provide automatically for payment of additional interest; rather, any such further entitlement stems from a claim filed under the CDA. *See CPT Corp. v. United States*, 25 Cl. Ct. 451, 456 (1992) ("[C]laims for interest under the PPA are subject to the procedural framework of the CDA.").[4] The trigger for additional interest consequently is the date of filing of a claim under the CDA, not the stoppage of the interest penalty that accrues under the PPA. *See Delta Air Lines, Inc. v. General Servs. Admin.*, CBCA 1306, 09-1 BCA ¶ 34052, 2009 WL 221103 ("Because we have found that amounts are due Delta, consequent to its claim for PPA interest, the airline is clearly

---

[4]Earlier, the Federal Circuit had reserved decision on "the question whether compliance with the Contract Disputes Act of 1978 is a jurisdictional prerequisite to a suit in the Claims Court to recover interest under the Prompt Payment Act." *New York Guardian Mortgagee Corp. v. United States*, 916 F.2d 1558, 1561 (Fed. Cir. 1990); *see also National Ass'n of Rehab. Facilities, Inc. v. Bowen*, 840 F.2d 931, 934 (D.C. Cir. 1988) (declining to decide whether interest penalties under the PPA would be subject to the process established by the CDA).

entitled to interest under the CDA from the date on which the GSA contracting officer received the airline's January 31, 2008, certified claim until the date of payment."); *see also* 41 U.S.C. § 7109(a)(1) ("Interest . . . due a contractor on a claim shall be paid to the contractor for the period beginning with the date the contracting officer receives the contractor's claim.").

The PPA provides that interest under the CDA "accrue[s] on an unpaid contract payment and on the unpaid penalty under [the PPA]." 31 U.S.C. § 3907(b)(2). As noted, the parties have stipulated that the finally adjusted "undisputed" contract payment was $289,454.77, and the interest penalty that accrued during one year pursuant to the PPA was $14,135.02. Therefore, interest under the CDA is payable on $303,589.79 from the date of Bay County's claim, April 19, 2010, to the date of the Air Force's payment of the combined amount, April 29, 2014. *See Sarang Corp. v. United States*, 76 Fed. Cl. 560, 563-64, 570 (2007); *Ocean Tech., Inc. v. United States*, 19 Cl. Ct. 288, 294 (1990); *but cf. Youngdale & Sons Constr. Co. v. United States*, 27 Fed. Cl. 516, 565-67 (1993) (awarding judgment for an undisputed amount due plus the interest penalty provided by the PPA on that undisputed amount, but not awarding further interest under the CDA because plaintiff "failed to file a proper certified claim with the C[ontracting] O[fficer] with respect to said underlying claim").

Interest under the CDA is also payable on the amount awarded by the court that had been disputed under the water contract, $352,094.05, and that under the sewer contract, $98,421.99. *See* Joint Status Report at 3-4 nn.4-5. This interest begins to accrue on the date of Bay County's claim and runs to the date of payment of the judgment. *See* 41 U.S.C. § 7109(a)(1).[5]

## CONCLUSION

Bay County is awarded $450,516.04 as damages for breach of its water and sewer contracts with the Air Force, plus interest on this amount from the date of its claim, April 19, 2010 to the date of payment, pursuant to 41 U.S.C. § 7109(a)(1).

---

[5]The parties have specified that the applicable interest rates under the CDA are as follows:

| | |
|---|---|
| January 1 — June 30, 2010: | 3.25% |
| July 1 — December 31, 2010: | 3.125% |
| January 1 — June 30, 2011: | 2.625% |
| July 1 — December 31, 2011: | 2.50% |
| January 1 — June 30, 2012: | 2.00% |
| July 1 — December 31, 2012: | 1.75% |
| January 1 — June 30, 2013: | 1.375% |
| July 1 — December 31, 2013: | 1.75% |
| January 1 — June 30, 2014: | 1.75% |

Bay County is also awarded interest under 41 U.S.C. § 7109(a)(1) on $303,589.79, from April 19, 2010 to April 29, 2014.

The Clerk is directed to enter judgment in accord with this disposition.

Bay County is awarded its costs of suit.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge